STEPHANIE M. HINDS (CABN 154284)
United States Attorney

**FILED**

Apr 19 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:22-cr-00165 WHO |
| Plaintiff, | VIOLATIONS: |
| v. | 18 U.S.C. §§ 1035 and 2 – False Statements Related to Health Care Matters; |
| JAIMI JANSEN, | 18 U.S.C. § 982(a)(7) – Forfeiture Allegation |
| Defendant. | SAN FRANCISCO VENUE |

I N F O R M A T I O N

The United States Attorney charges:

<u>Introductory Allegations</u>

At all times relevant to this Information, unless otherwise indicated:

1. Defendant JAIMI JANSEN ("JANSEN") and others committed the crime of false statements related to health care matters by selling "homeoprophylaxis immunization" pellets for COVID-19 and distributing false and fraudulent Centers for Disease Control and Prevention ("CDC") COVID-19 vaccination record cards. The purpose of the scheme was to make money by claiming that homeoprophylaxis immunizations would provide immunity to COVID-19 and to conceal and disguise

INFORMATION

the scheme by making it appear that customers received COVID-19 vaccines authorized by the U.S. Food and Drug Administration ("FDA"). JANSEN served as a distributor for Juli Mazi, a naturopathic doctor based in Napa, California, and aided and abetted Mazi's scheme by purchasing the homeoprophylaxis pellets and false and fraudulent CDC COVID-19 vaccination record cards and reselling them to third parties.

## INDIVIDUALS AND ENTITIES

2. Defendant JANSEN resided in the Northern District of California and was the owner of Santa Cruz Core, an integrative health and wellness center located in the Northern District of California.

3. Juli Mazi resided in the Northern District of California and was a licensed naturopathic doctor who owned a naturopathic medical practice located in the Northern District of California.

## THE FEDERAL COVID-19 VACCINATION PROGRAM

4. In or around January 2020, the Secretary of the U.S. Department of Health and Human Services ("HHS") declared a national public emergency under Title 42, United States Code, Section 247d, as a result of the spread of the novel coronavirus COVID-19 within the United States. On or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19.

5. To help combat COVID-19 and the resulting pandemic, in May 2020, the United States initiated Operation Warp Speed, later renamed HHS-DOD COVID19 Countermeasures Acceleration Group ("CAG"), a partnership between HHS, the Department of Defense, and other federal agencies, which existed through December 31, 2021, to make safe and effective vaccines available as quickly as possible. The principal purpose of CAG was to ensure that every American could receive a COVID-19 vaccine by supporting the acceleration of vaccine development, manufacturing, and distribution to states, other jurisdictions, and federal agencies and programs for vaccine administration.

6. Upon awarding contracts and providing funding, by September 2021, the federal government had acquired over 673 million doses of vaccines developed by Moderna, Pfizer, and Johnson and Johnson, which was sufficient to fully vaccinate 373 million people, in line with CAG's overall goal of making sufficient adult vaccines available free of charge for the American public.

7. In order to enable their rapid distribution upon the development of safe and effective

COVID-19 vaccines, the Secretary of HHS issued a notice, pursuant to section 564 of the Federal Food, Drug, and Cosmetic Act, that there was a public health emergency that had a significant potential to affect national security or the health and security of United States citizens living abroad and that circumstances existed justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic. Pursuant to the authority granted under this declaration, the FDA approved the Pfizer COVID-19 vaccine for emergency use on or about December 11, 2020, the Moderna COVID-19 vaccine for emergency use on or about December 18, 2020, and the Johnson and Johnson COVID-19 vaccine for emergency use on or about February 27, 2021 (together, the "COVID-19 vaccines").

8. To ensure that each American could receive a COVID-19 vaccine, the CDC prepared for widespread administration, distribution, and tracking of the administration of COVID-19 vaccines. Vaccine allocation and centralized distribution utilized HHS's Vaccine Tracking System (VTrckS), a secure, web-based system that integrated the entire publicly funded vaccine supply chain from purchasing and ordering, through distribution to participating state, local, and territorial health departments and health care providers.

9. The CDC controlled the distribution of COVID-19 vaccines and COVID-19 vaccination record cards, distributing them only to medical providers that were eligible to administer the COVID-19 vaccines.

10. To be eligible to administer the COVID-19 vaccines, medical providers and other administers of COVID-19 vaccines were required to enter into provider agreements with the CDC ("COVID-19 Provider Agreement").

11. Additionally, per the COVID-19 Provider Agreement, medical providers and other administers of COVID-19 vaccines agreed, and were required, to "provide a completed COVID-19 vaccination record card to every COVID-19 [v]accine recipient, the adult caregiver accompanying the recipient, or other legal representative" ("COVID-19 vaccination record card").

12. The COVID-19 vaccination record cards were designed and printed according to CDC specifications and requirements and contained both HHS's and CDC's official agency logos. The COVID-19 vaccination record cards recorded the name and date of birth of the individual receiving the

INFORMATION                                    3

COVID-19 vaccine, the name of the manufacturer of the COVID-19 vaccine administered, the location where each dose was administered, and the lot number of the vaccine dose. A lot number was a unique number given by vaccine manufacturers to a specific batch of a vaccine.

13. The CDC mandated that valid proof of COVID-19 vaccination, specifically, the COVID-19 vaccination record card, could only be provided to individuals by authorized providers administering COVID-19 vaccines.

## THE HOMEOPROPHYLAXIS IMMUNIZATION AND COVID-19 VACCINATION RECORD CARD FRAUD SCHEME

14. Beginning in or around May 2021, and continuing through in or around July 2021, JANSEN made false statements, and aided and abetted the making of false statements, relating to health care matters, in connection with offering and selling COVID-19 homeoprophylaxis immunizations, and false and fraudulent CDC COVID-19 vaccination record cards falsified to make it appear that customers received an FDA-authorized COVID-19 vaccine.

15. In or around May 2021, JANSEN and employees of Santa Cruz Core engaged in health care consultations with Dr. Juli Mazi, who offered homeoprophylaxis pellets for sale and claimed that they could provide lifelong immunity to COVID-19, and false and fraudulent CDC COVID-19 vaccination record cards, which Mazi instructed should be filled out to make it falsely appear as though the recipient had received the FDA-authorized Moderna COVID-19 vaccine, when the recipient did not. JANSEN understood that Mazi's sale of homeoprophylaxis pellets accompanied by false and fraudulent CDC COVID-19 vaccination record cards included materially false statements related to the provision of a medical benefit.

16. In furtherance of Mazi's offense, JANSEN collected and provided to Mazi the names and dates of birth for customers who desired the COVID-19 homeoprophylaxis pellets and false and fraudulent CDC COVID-19 vaccination record cards. JANSEN paid Mazi on behalf of the customers but charged the customers a higher price than she paid Mazi in order to make a personal profit. The homeoprophylaxis pellets that Mazi shipped to JANSEN came in large vials which contained doses for multiple individuals. JANSEN repackaged the pellets into smaller vials with individual doses which could be distributed to the recipients. JANSEN provided to each customer a vial with the individual

INFORMATION                                           4

dose, the blank false and fraudulent CDC COVID-19 vaccination record cards provided by Mazi, and a printout of Mazi's two-page instruction sheet with instructions on how to fill in the false and fraudulent CDC COVID-19 vaccination record cards to make it falsely appear as though the recipient had received the Moderna COVID-19 vaccine. On or about June 11, 2021, Mazi, with JANSEN's coordination, conducted a virtual appointment for the individuals who had received Mazi's COVID-19 homeoprophylaxis pellets and false and fraudulent CDC COVID-19 vaccination record cards from JANSEN. During the appointment, Mazi answered questions regarding COVID-19 homeoprophylaxis and completion of the false and fraudulent CDC COVID-19 vaccination record cards.

17. JANSEN distributed the COVID-19 homeoprophylaxis pellets and false and fraudulent CDC COVID-19 vaccination record cards to approximately 170 recipients. JANSEN received approximately $19,500 from the recipients as a result of this scheme, with a personal profit of approximately $14,000.

COUNTS ONE THROUGH THREE:    (18 U.S.C. §§ 1035 and 2 – False Statements Related to Health Care Matters)

18. Paragraphs 1 through 17 of this Information are re-alleged and incorporated as if fully set forth here.

19. On or about the dates set forth below, within the Northern District of California, the defendant,

JAIMI JANSEN,

did, in a matter involving a health care benefit program, and in connection with the delivery of and payment for health care benefits, items, and services, knowingly and willfully aid and abet the use of materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, namely, the defendant recruited third parties to purchase COVID-19 homeoprophylaxis immunizations from Mazi, collected and provided to Mazi, via electronic mail messages, the names and dates of birth of individuals who would receive Mazi's COVID-19 homeoprophylaxis pellets and false and fraudulent CDC COVID-19 vaccination record cards, and, on or about June 11, 2021, assisted Mazi in conducting a virtual medical appointment for the individuals who had received the homeoprophylaxis pellets and the false and fraudulent CDC COVID-19 vaccination

INFORMATION                                          5

record cards from the defendant, wherein Mazi provided instruction on COVID-19 homeoprophylaxis and the entry of false information onto the false and fraudulent CDC COVID-19 vaccination record cards, including the following:

| COUNT | DATE | PATIENT | FALSE WRITING |
|---|---|---|---|
| COUNT 1 | June 11, 2021 | C.S. | COVID-19 Vaccination Record Card |
| COUNT 2 | June 11, 2021 | C.RR. | COVID-19 Vaccination Record Card |
| COUNT 3 | June 11, 2021 | Z.C. | COVID-19 Vaccination Record Card |

Each in violation of Title 18, United States Code, Section 1035 and Title 18, United States Code, Section 2.

FORFEITURE ALLEGATION:     (18 U.S.C. § 982(a)(7))

20.     The allegations contained in this Information are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

21.     Upon a conviction for Counts One, Two, or Three of this Information, the defendant,

JAIMI JANSEN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all property, real or personal, constituting or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations.

22.     If any of the property described above, as a result of any act or omission of the defendant:

    a.     cannot be located upon exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1). All pursuant to Title 18, United States Code, Section 982(a)(7), and Federal Rule of Criminal Procedure 32.2.

DATED: April 19, 2022

STEPHANIE M. HINDS
United States Attorney

/s/ Katherine Lloyd-Lovett
KATHERINE M. LLOYD-LOVETT
Assistant United States Attorney

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

JACOB FOSTER
Assistant Chief, Fraud Section
U.S. Department of Justice

/s/ S. Babu Kaza
S. BABU KAZA
Trial Attorney, Fraud Section
U.S. Department of Justice